**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL TROEGER,**

                              **Plaintiff,**

      **vs.**                                  **1:15-CV-1294**
                                              **(MAD/DJS)**

**ELLENVILLE CENTRAL SCHOOL DISTRICT,**

                             **Defendant.**
_____

**APPEARANCES:**                    **OF COUNSEL:**

**MICHAEL TROEGER**
171 Black Road
Shokan, New York 12481
Plaintiff *pro se*

**DRAKE, LOEB LAW FIRM**            **ADAM L. RODD, ESQ.**
555 Hudson Valley Avenue
Suite 100
New Windsor, New York 12553
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

    *Pro se* Plaintiff Michael Troeger ("Plaintiff") commenced this action on October 30, 2015

against Defendant Ellenville Central School District ("Defendant") pursuant to 42 U.S.C. § 1983

alleging First, Fifth, and Fourteenth Amendment violations, Title VII of the Civil Rights act of

1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12101 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and various other tort

actions seeking injunctive, declaratory, and monetary relief. *See* Dkt. No. 6. Currently pending

before the Court is Defendant's motion to dismiss and Plaintiff's motion to file a second amended complaint. *See* Dkt. Nos. 16, 31.

## II. BACKGROUND

**A.    Plaintiff's Complaint**

Plaintiff is a 50 year old Caucasian male employed at the Defendant School District as a school counselor. Dkt. No. 6 at ¶¶ 2, 3. Starting in October of 2014, Plaintiff filed several internal complaints with Defendant, which were enumerated 2014-15-1 through 2014-15-168 and 2015-16-1 through 2015-16-6 (collectively, the "internal complaints"). *Id.* at ¶ 9. Plaintiff estimates that these complaints contained in excess of 10,000 allegations of harassment, discrimination, retaliation, and complaints of a hostile work environment. *Id.* at ¶ 11. Plaintiff contends that Defendant either failed to investigate these complaints, or assigned a biased compliance officer who was implicated in the complaint to investigate the claims. *Id.* at ¶¶ 12-19. Plaintiff argues that this manner of investigation, or lack thereof, violated the terms of his collective bargaining agreement ("CBA"). *Id.* at ¶ 20. In furtherance of receiving an impartial investigation, Plaintiff has made in excess of 200 requests for a third party investigator to review his allegations, which have all been denied by the Board of Education. *Id.* at ¶ 30.

Plaintiff contends that Defendant failed to conduct a thorough investigation into his complaints because the compliance officers did not interview Plaintiff or other witnesses that he proposed. *Id.* at ¶ 39. Specifically, Sandra J. Oglesby, an individual who submitted a statement in support of Plaintiff on October 9, 2015, stated that she had not been contacted by Defendant in investigation of Plaintiff's internal complaints. *Id.* at ¶ 241; *see also* Dkt. No. 6-1 at 41-45. Plaintiff stated that he has named over 200 witnesses regarding his internal complaints, all of whom have not been contacted by Defendant. *Id.* at ¶ 242. Lisa Wiles, superintendent of the

2

Defendant School District ("Superintendent Wiles"), investigated several charges made against her and made dispositions in her favor in every instance. *Id.* at ¶ 26-28. Further, compliance officer Angela Urbina was allegedly told by Defendant's counsel to investigate a complaint in which she was an implicated party. *Id.* at ¶ 41.

On the one occasion, Plaintiff accepted a correspondence from compliance officer Mr. Latvis, who is a Caucasian male, wherein Mr. Latvis, being accompanied by a security guard, interrupted a meeting between Plaintiff and students with their parents and demanded that Plaintiff accept a letter from Defendant. *Id.* at ¶¶ 334-35. Plaintiff submitted an informal complaint of this occurrence, which has not been investigated by Defendant. *Id.* at ¶¶ 337-38. Mr. Latvis was terminated shortly thereafter. *Id.* at ¶ 339.

Plaintiff alleges that Defendant dissuaded him from receiving union representation by threatening the union president of racism charges for filing grievances on Plaintiff's behalf. *Id.* at ¶¶ 71, 80. Nonetheless, Plaintiff contends that the union has filed multiple grievances regarding Defendant's refusal to investigate his complaints. *Id.* at ¶ 81. Plaintiff asserts that Defendant has denied his request to attend a professional development class and to complete an educational administration internship. *Id.* at ¶¶ 184-85. Plaintiff was berated, humiliated, and screamed at in response to requesting the professional growth opportunity. *Id.* at ¶ 186.

Plaintiff contends that he made several requests under New York's Freedom of Information Law ("FOIL") for the records of the investigations into his internal complaints, none of which have been produced. *Id.* at ¶ 37. Plaintiff also states that Defendant "routinely delays FOIL response until the fifth day following the request" and "routinely adds an additional twenty . . . business days to determine the right of access." *Id.* at ¶¶ 367-68. On November 13, 2015,

Plaintiff appealed the findings of eight FOIL requests. *Id.* at ¶ 377. Superintendent Wiles has not responded to this appeal. *Id.* at ¶ 378.

Plaintiff contends that Defendant engaged in fraud by concealing evidence and otherwise misleading the court by deceptively pretending to investigate the internal complaints. *Id.* at ¶ 91. The deceitful actions include denying that Plaintiff requested a reasonable accommodation, conducting a "mock investigation," denying Plaintiff access to workers' compensation benefits, and utilizing unspecified forged or altered documents. *Id.* at ¶¶ 92, 94, 96, 104, 147. Plaintiff also states that Defendant has altered his personnel file in some unspecified manner, which casts Plaintiff in a negative light. *Id.* at ¶ 35. Plaintiff contends that Defendant forged or altered his complaint numbered 2015-16-1 by removing or altering the date stamp. *Id.* at ¶ 153, 158-59. On December 2, 2015, Plaintiff submitted complaints numbered 2015-16-5 and 2015-16-6, as well as a FOIL request. *Id.* at ¶ 160. Defendant refused Plaintiff's request to date stamp these complaints. *Id.* at ¶ 161-62. Plaintiff also contends that Defendant presented numerous statements at a New York State Division of Human Rights ("DHR") hearing that were false, defamatory, or misleading. *Id.* at ¶ 239.

Plaintiff states that Defendant retaliated against him for "advocating for special needs students . . . and for speaking with parents regarding the rights of child(ren) to a Free and Appropriate Public Education." *Id.* at ¶ 57.

Plaintiff argues that he has several qualifying disabilities, including "a back injury, GI/ disorder with explosive vomiting, asthma, and emotional disabilities of anxiety, depression, and post-traumatic stress disorder." *Id.* at ¶ 108. Plaintiff asserts that Defendant retaliated against him based on his disability by placing him on disability leave, "despite medical recommendations for [him] to return to work with accommodations." *Id.* at ¶ 111. On September 16 and 22, 2015,

Plaintiff wrote to Superintendent Wiles seeking a reasonable accommodation for his disability. *Id.* at ¶ 135. Superintended Wiles did not respond to this request. *Id.* at ¶ 136. On October 20, 2015, Plaintiff submitted complaint 2015-16-1 in regards to Defendant's failure to respond to his accommodation request. *Id.* at ¶ 139. On October 30, 2015, Plaintiff informed Defendant that he filed the instant action in this Court. *Id.* at ¶ 140. On November 3, 2015, Defendant assigned Compliance Officer Pabon to investigate complaint number 2015-16-1. *Id.* at ¶ 141. Plaintiff contends that Ms. Pabon was a biased investigator because she was Hispanic, and Defendant falsely alleged that Plaintiff has "a troubling pattern of discrimination" toward Blacks and Hispanics. *Id.* at ¶¶ 142, 143.

Plaintiff began to experience increased anxiety and other physiological symptoms as a result of Defendant's failure to investigate his claims, which caused him to miss work from September 30, through October 5, 2015. *Id.* at ¶¶ 43, 45. Plaintiff was thereafter diagnosed with post-traumatic stress disorder ("PTSD"). *Id.* at ¶ 52. Plaintiff contends that he has incurred in excess of $5,000 in legal fees in attempting to redress his complaints. *Id.* at ¶ 61. Plaintiff has been required to expend his sick leave as a result of Defendant's actions, which is valued at approximately $522 per day. *Id.* at ¶ 131. Plaintiff asserts that Defendant applies a different standard to his complaints than to other employees, limiting his ability to file complaints to his lunch periods or other off duty time. *Id.* at ¶ 169-70. Plaintiff contends that these lost lunch breaks are valued in excess of $10,000. *Id.* at ¶ 171. Plaintiff also states that he has worked uncompensated overtime, which is valued in excess of $132,840. *Id.* at ¶ 177.

Plaintiff states that "Defendant did harass, intimidate, stalk, block an exit, place under surveillance, provide negative, threatening, and disparaging written communication, belittle, humiliate, and conduct other acts of like kind targeting [P]laintiff on multiple occasions." *Id.* at ¶

196. Plaintiff "was threatened [that] he could not file subsequent complaints regarding such treatment, or in sum or substance, he would be disciplined for racism." *Id.* at ¶ 197. Moreover, "Defendant threatens and otherwise dissuades [P]laintiff and [P]laintiff's union representative[] regarding complaints of discrimination, retaliation, or harassment, if the alleged violator is Black and/or Hispanic." *Id.* at ¶ 203. Plaintiff's support for these allegations is based on a June 24, 2015 letter that Superintendent Wiles wrote to Plaintiff discussing several of his pervious complaints. *Id.* at ¶ 215; *see also* Dkt. No. 6-1 at 77-78. Plaintiff contends that this letter falsely accuses Plaintiff of being racist, defames him by implying that he is aggressive or mentally imbalanced, and threatens to terminate him if he continues to file complaints or oppose discrimination. Dkt. No. 6 at ¶¶ 216-28.

Plaintiff contends that Defendant has caused Plaintiff to be viewed as racist and in a negative light because he has received negative written correspondence during his lunch breaks, has been "mocked, berated, belittled and otherwise humiliated . . . in front of other staff, reducing [him] to tears[,]" and requires a witness to accompany Plaintiff's interactions with minority compliance investigators. *Id.* at ¶¶ 256-59. Plaintiff being labeled as a racist impedes his ability to serve students and eliminates his prospects of being considered for promotions. *Id.* at ¶ 314. On April 22, 2015, Plaintiff "was harassed by a compliance officer, wherein she mocked him, belittled him, and talked in a child's voice; humiliating [P]laintiff to sobbing . . . ." *Id.* at ¶ 268.

**B.     Procedural History**

Plaintiff has filed numerous complaints against Defendant in federal and state courts that are related to the instant action. On June 18, 2010, Plaintiff filed his first lawsuit in federal court alleging that Defendant violated the ADA by failing to accommodate his disabilities. *See* Dkt. No. 16-1 at ¶ 4; Dkt. No. 16-3 at 1-6. The action was dismissed on August 23, 2013, and the

dismissal was affirmed by the Second Circuit on May 9, 2013. *See* Dkt. No. 16-1 at ¶ 5; Dkt. No. 16-4 at 1-19. On December 26, 2012, Plaintiff filed his second lawsuit against Defendant in federal court asserting claims that are substantially similar to the instant action, including that Defendant created a hostile work environment, denied Plaintiff overtime pay and sick leave, failed to investigate Plaintiff's complaints of discrimination, retaliation and harassment, failed to assign unbiased investigators, and denied Plaintiff access to administrative internships. *See* Dkt. No. 16-1 at ¶ 7; Dkt. No. 16-4 at 35-42. Plaintiff failed to serve Defendant within the required 120 days of filing and, on March 31, 2014, Plaintiff's complaint was dismissed. *See* Dkt. No. 16-1 at ¶ 8; Dkt. No. 16-5.

On July 27, 2015, Plaintiff filed a charge of discrimination and retaliation against Defendant and Superintendent Wiles with the DHR, alleging that Plaintiff was subject to a multitude of discriminatory and retaliatory actions. *See* Dkt. No. 16-1 at ¶ 10; Dkt. No. 16-13 at 1-20. The DHR conducted an investigation into Plaintiff's allegations, which included an interview of Plaintiff on December 3, 2015. *See* Dkt. No. 16-1 at ¶ 10; Dkt. No. 16-14 at 26-33. On January 21, 2016, the DHR issued its determination "that there is NO PROBABLE CAUSE to believe that the [Defendants] have engaged in or are engaging in the unlawful discriminatory practice complained of." Dkt. No. 16-13 at 22. On March 24, 2016, Plaintiff commenced an action in the Supreme Court of New York, Ulster County, pursuant to CPLR Article 78, seeking to annul the DHR's decision. *See* Dkt. No. 37-1. On July 21, 2016, Ulster County Supreme Court granted Defendant's motion to dismiss the Article 78 proceeding, thereby affirming the DHR's no probable cause determination. *See id.*

On August 7, 2015, Plaintiff received a right to sue letter from the Equal Employment Opportunity Commission ("EEOC") relating to a charge of discrimination. Dkt. No. 6 at ¶ 5.

Plaintiff timely filed the instant action in this Court on October 30, 2015 and filed an amended complaint on December 6, 2015. *Id.* at ¶ 6.

## III. DISCUSSION

Plaintiff's complaint lists 17 enumerated causes of action. *See* Dkt. No. 6. However, several of these claims are repetitious and commingled with numerous other assertions. Liberally construed, the Court interprets Plaintiff's complaint as raising the following 16 causes of action: Title VII, ADA, Rehabilitation Act, and ADEA (1) retaliation, (2) discrimination, and (3) hostile work environment claims; (4) First Amendment retaliation; Fifth and Fourteenth Amendment (5) equal protection, (6) procedural, and (7) substantive due process violations; (8) ADA failure to accommodate; and a variety of state law claims including (9) breach of contract; (10) forgery or fraud;(11) intentional infliction of emotional distress, (12) defamation, (13) invasion of privacy, (14) loss of consortium, (15) negligent failure to provide a safe workplace, and (16) breach of the implied covenant of good faith and fair dealing in public sector employment. *See generally id.*

### A.     Standard of Review

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the

allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)); *see also Sutton ex rel. Rose v. Wachovia Secs., LLC*, 208 Fed. Appx. 27, 29-30 (2d Cir. 2006) (noting that, on a motion to dismiss, a court may take judicial notice of documents filed in another court).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *Id.* at 570.

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "'construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002) (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir. 2000)).

## B.    Res Judicata

Under the Full Faith and Credit Clause of the Constitution of the United States, implemented at 28 U.S.C. § 1738, "[i]t is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). "This principle includes no exception for state court decisions 'upholding a state administrative agency's rejection of [a] . . . discrimination claim as meritless when the state court's decision would be res judicata in the state's own courts.'" *United States v. E. River Hous. Corp.*, 90 F. Supp. 3d 118, 139 (S.D.N.Y. 2015) (quoting *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982)).

The doctrine of *res judicata*, or claim preclusion, applies if a defendant can show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *see also Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 426 (S.D.N.Y. 2008) (noting that *res judicata* applies equally to *pro se* litigants). Additionally, once a final judgment has been entered by a court of competent

jurisdiction, "the parties to the suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985) (internal quotation marks omitted); *see also Colonial Acquisition P'ship v. Colonial at Lynnfield, Inc.*, 697 F. Supp. 714, 717-18 (S.D.N.Y. 1988) (quoting *Nat'l Labor Relations Bd. v. United Techs. Corp.*, 706 F.2d 1254, 1259 (2d Cir. 1983)) ("Such a judgment precludes the subsequent litigation both of issues actually decided in determining the claim asserted in the first action[] and of issues that could have been raised in the adjudication of that claim"). "New York takes a transactional approach to *res judicata*: 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" *Yeiser*, 535 F. Supp. 2d at 422 (quoting *Sosa v. J.P. Morgan Chase Bank*, 822 N.Y.S.2d 122, 124 (2d Dep't 2006)). Thus, "[e]ven if there are variations in the facts alleged or different relief is sought," any subsequent action is barred if it arises out of the same general set of circumstances. *Id.* Of course, "[w]here 'formal barriers' to asserting a claim existed in the first forum it would be 'unfair to preclude [the plaintiff] from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.'" *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986) (quoting Restatement (Second) of Judgments § 26(1)(c), comment c (1982)).

Given that the Article 78 proceeding was commenced after the instant action in this Court, "[f]or purposes of res judicata, 'the effective date of a final judgment is the date of its rendition, without regard to the date of commencement of the action in which it is rendered or the action in which it is to be given effect.' Thus, all that is required for the operation of res judicata is that final judgment in an action precede judgment in the pending action." *Cowan v. Ernest Codelia,*

*P.C.*, 149 F. Supp. 2d 67, 74-75 (S.D.N.Y. 2001) (quoting Restatement (Second) of Judgments § 14) (citing *Williams v. Ward*, 556 F.2d 1143, 1154 (2d Cir. 1977)) (other internal citation omitted).  Further, "[w]here the facts that have accumulated after the first action are enough on their own to sustain the second action, the new facts clearly constitute a new 'claim,' and the second action is not barred by *res judicata*."  *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 384 (2d Cir. 2003) (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327-28 (1955)) (other citations omitted).  "[H]owever, claim preclusion may apply where some of the facts on which a subsequent action is based post-date the first action but do not amount to a new claim."  *Id.*

The *res judicata* issues raised in the instant action are similar to those considered by the Second Circuit in *Bray v. New York Life Insurance*, 851 F.2d 60 (2d Cir. 1988) and *Kirkland v. City of Peekskill*, 828 F.2d 104 (2d Cir. 1987).  In *Bray*, the plaintiff filed a complaint with the DHR shortly after she was terminated from her employment, alleging discrimination based on her race and sex.  851 F. 2d at 61.  The DHR issued a "no probable cause" determination and, thereafter, the plaintiff filed an Article 78 petition seeking to reverse the DHR determination.  *Id.* New York Supreme Court, Westchester County, dismissed the plaintiff's Article 78 petition "for failure to commence th[e] proceeding within sixty days as required by section 298 of the Executive Law."  *Id.* at 62.  Prior to the Supreme Court's dismissal of the plaintiff's Article 78 proceeding, she commenced an action in federal court raising claims under Title VII and 42 U.S.C. § 1981.  *Id.*  The Second Circuit affirmed the district court's determination that the dismissal of the plaintiff's Article 78 proceeding had a preclusive effect on her federal claims. Specifically, "a federal court in a Title VII case must give preclusive effect to a decision of a state court upholding a state administrative agency's rejection of an employment discrimination claim." *Id.* (citation omitted).

In *Kirkland*, the plaintiff likewise received a no probable cause determination from the DHR and subsequent dismissal of his Article 78 petition as untimely. 828 F.2d at 106. The Second Circuit held that, although Article 78 proceedings will not always preclude a subsequent federal civil rights action seeking damages since damages are not readily available in all Article 78 proceedings, when "the Article 78 proceeding [i]s commenced to review a determination of the NYSDHR, an agency with power to award both back pay and compensatory damages under N.Y. Exec. Law § 297(4)(c)(ii, iii)," such proceeding acts as a bar to subsequent federal litigation. *Id.* at 109.

Here, Plaintiff's DHR action raised all of the same allegations of discrimination, retaliation, harassment, and hostile work environment as he included in his amended complaint in this Court. Plaintiff's written DHR complaint states that Defendant "refuses to investigate my [discrimination and retaliation] allegations pursuant to" their anti-discrimination and anti-harassment policies. Dkt. No. 16-13 at 19. Further, Plaintiff alleged that Defendant "now accuses [him] of racism, as several of the subjects of [his] recent complaints are black and/or [H]ispanic," and "now falsely accuses me of 'shouldering' past their attorney, implying a physical assault." *Id.* Plaintiff argued that, to the extent investigations are made on his complaints, Superintendent Wiles "assigns a compliance officer who is implicated in the charge, who cannot be expected to conduct an impartial investigation." *Id.* During the December 3, 2015 interview with the DHR, Plaintiff disclosed all of the same factual allegations contained in his amended complaint in the instant action. *See* Dkt. No. 16-14 at 26-33. Plaintiff identified the same compliance officers he claims were biased in his amended complaint, Angela Urbina, Jennifer Williams, and Matt Latvis. *Id.* at 26. Plaintiff stated that his union had filed several grievances, but Defendant refused to meet with him or interview his witnesses and warned him that he

"cannot make any complaints against anyone of a protected class." *Id.* at 26, 29.  Specifically,

Plaintiff reported that Defendant refused to interview Sandra Oglesby despite complaints that she

witnessed certain retaliation.  *Id.* at 33.  Plaintiff stated that he was denied ADA accommodations

for a request he made between 2005 and 2007 and again in late 2015.  *See id.* at 26, 32.  Plaintiff's

further allegations were identical to his amended complaint in this action: that Defendant had

improperly required him to use his sick time and also deprived him of lunch breaks and overtime

pay, *id.* at 27, 28, 29, that he was retaliated against for advocating for his students, *id.* at 27, that

any investigations into his complaints were done by individuals who were implicated in those

complaints, such that he never received an impartial investigation, *id.* at 28, that he developed

anxiety, depression, and PTSD, *id.*, that Defendant has repeatedly failed to respond to his FOIL

requests, *id.* at 29, that he received defamatory and negative communication through personal

delivery in April and May of 2015, *id.*, that Defendant has been forging documents by changing

or omitting the date stamp on his internal complaints and FOIL requests, *id.* at 30-31, that

Defendant refused to send him to training and denied him an internship, *id.* at 31, and that

Defendant put false discipline statements in Plaintiff's record stating that he was a racist, that he

assaulted a lawyer, and that he was conducting personal business out of his office, *id.* at 32.

In addition to restating the same factual allegations in the DHR action as his instant

amended complaint, Plaintiff sought the same relief in his DHR action that he now seeks from

this Court.  Specifically, the supreme court's decision noted that Plaintiff requested, *inter alia*,

"the removal of the Superintendent and entire Board of Education, expungement of his

disciplinary history or any complaints against him contained in his personnel file, full back pay,

damages, a public apology and an injunction against further discrimination."  Dkt. No. 37-1 at 2.

Plaintiff's amended complaint requests these same damages.  *See* Dkt. No. 6 at 61-63.

Plaintiff received a final judgment in his Article 78 proceeding in a written decision by Judge Richard Mott on July 21, 2016. *See* Dkt. No. 37-1. The Article 78 proceeding was dismissed on three separate grounds: failure to timely join the DHR as a necessary party, failure to comply with service or pleading requirements, and a decision on the merits that a review of the record revealed a rational basis for the DHR's no-probable cause determination. *Id.* at 4-5. The dismissal based upon failure to join a necessary party and improper service are not final decisions on the merits for *res judicata* purposes. *See Hanrahan v. Riverhead Nursing Home*, 592 F.3d 367, 369 (2d Cir. 2010) (holding that dismissal of an Article 78 petition for failure to join the DHR as a necessary party is not a dismissal on the merits for *res judicata* purposes); *Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 373 n.3 (2d Cir. 1978) (citation omitted) ("A dismissal for failure of service of process, of course, has no Res judicata effect"). On the third ground for dismissal, the Judge Mott specifically stated that, "even were the Court to consider the merits of the [no-probable cause] Determination . . . [a] review of the record evidence submitted demonstrates a rational basis for the SDHR no-probable cause Determination with respect to [Plaintiff's] complaints considered therein." Dkt. No. 37-1 at 5. This alternative holding is clearly a dismissal on the merits of Plaintiff's case, as Judge Mott specifically stated that he was considering the merits and because it was based upon a review of the entire record evidence. *See Deacon's Bench, Inc. v. Hoffman*, 477 N.Y.S.2d 447, 499 (3d Dep't 1984) (citations omitted) (emphasis added) ("[W]hen a complaint is dismissed for legal insufficiency or other defect in pleading, it does not act as a bar to commencement of a new action for the same relief *unless the dismissal was expressly made on the merits . . .*"); *see also Hanrahan*, 592 F.3d at 369 (quoting *Nems Enters., Ltd. v. Seltaeb, Inc.*, 263 N.Y.S.2d 525, 526 (1st Dep't 1965)) ("[A] dismissal of an action by a New York court 'may not be considered a dismissal on the merits' if it does not

specifically state that the dismissal is on the merits"); *Strange v. Montefiore Hosp. & Med. Ctr.*, 59 N.Y.2d 737, 738 (1983). That only one of the three grounds for dismissal was a judgment on the merits does not preclude the application of *res judicata*. The Second Circuit has expressly stated that "[a]n alternative conclusion in an earlier case that is directly relevant to a later case is not *dicta*; it is an entirely appropriate basis for a holding in the later case." *Pyett v. Pa. Bldg. Co.*, 498 F.3d 88, 93 (2d Cir. 2007), *rev'd on other grounds sub nom. 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009); *see also MacDonald, Sommer & Frates v. Cnty. of Yolo*, 477 U.S. 340, 346 n.4 (1986)) ("[S]ince the Superior Court did not rest its holding on only one of its two stated reasons, it is appropriate to treat them as alternative bases of decision [rather than *dicta*]"). Accordingly, the Court finds that Plaintiff's previous state court judgment was based on an adjudication on the merits, with the same party involved in the instant action, and Plaintiff raised the same claims in both actions. *See Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000).

Plaintiff's opposition asserts several unpersuasive arguments for why *res judicata* should not preclude the instant action. *See* Dkt. No. 38. First, he argues that the same parties were not involved in the previous action because Defendant was named as well as the DHR. *See id.* at 2. Contrary to Plaintiff's assertions, only Defendant and the Board of Education were named in the DHR action and Article 78 petition. *See* Dkt. No. 16-13 at 22; Dkt. No. 37-1 at 1. Thus, Defendant was clearly a party of both the DHR and Article 78 proceedings as well as the instant action. Second, Plaintiff contends that the previous litigation was not "on the merits" because he did not have a full chance to present his case. *See* Dkt. No. 38 at 2. As mentioned above, New York courts consider a dismissal for failure to state a claim an adjudication on the merits for *res judicata* purposes if the decision specifically states that it is considering the merits of the case. Further, Plaintiff's argument that he did not have an opportunity to present his claims is

unpersuasive as Plaintiff engaged in a lengthy interview with the DHR on December 3, 2015, during which he was allowed to present any additional evidence and testimony that he believed was relevant to his claims. *See* Dkt. No. 16-14 at 26-33. Lastly, Plaintiff contends that unreviewed state agency decisions cannot have preclusive effect on federal lawsuits. *See* Dkt. No. 38 at 3. Again, as mentioned above, Plaintiff's DHR decision was not an unreviewed administrative decision as he availed himself of the state court system by bringing an Article 78 proceeding to review the agency's findings. Thus, the Court finds that Plaintiff's retaliation, harassment, discrimination, failure to accommodate, and hostile work environment claims in his amended complaint are precluded by the final judgment in state court. Defendant's motion is granted on this ground and Plaintiff's causes of action pursuant to Title VII, the ADA, the Rehabilitation Act, and the ADEA are dismissed.

## C.     First Amendment Retaliation

In order for a public employee to establish a First Amendment retaliation claim, the employee must prove that "(1) he engaged in constitutionally protected speech; (2) he suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision." *Gusler v. City of Long Beach*, 823 F. Supp. 2d 98, 123 (E.D.N.Y. 2011) (quotation omitted).

A government employee's speech is constitutionally protected if the employee is speaking in his capacity as a citizen on a matter of public concern. *See Weintraub v. Bd. of Educ.*, 593 F.3d 196, 201-02 (2d Cir. 2010) (citations and quotations omitted). An employee is not speaking in his capacity as a citizen for purposes of the First Amendment if he is acting pursuant to his official duties. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

Here, Plaintiff alleges that his protected speech was "advocating for special needs students . . . and for speaking with parents regarding the rights of child(ren) to a Free and Appropriate Public Education." Dkt. No. 6 at ¶ 57. Defendant argues that this is not protected because Plaintiff was acting under his official duties when making this speech. *See* Dkt. No. 16-15 at 11. Plaintiff's amended complaint essentially concedes that advocating for students in this manner was pursuant to his duties as a school guidance counselor by stating that "such act [is] consistent with plaintiff's position as school counselor." *See* Dkt. No. 6 at ¶ 57. Since Plaintiff's allegations state that he engaged in this speech as a part of his official duties as a public employee, these statements are not protected speech and cannot form the basis for a First Amendment retaliation claim.

Despite the amended complaint failing to specifically identify other protected speech, the Court will briefly discuss whether Plaintiff's internal complaints or his DHR action and instant lawsuit are protected speech. When an employee's speech consists of internal complaints or lawsuits regarding discrimination or retaliation in the workplace, the relevant inquiry is whether that speech was made "on a matter of public concern." *Huth v. Haslun*, 598 F.3d 70, 74 (2d Cir. 2010). In *Huth*, the Second Circuit held that a plaintiff's act of filing a lawsuit was not protected speech wherein she alleged that she was retaliated against for certain statements that she made to her superiors. *Id.* Specifically, the complaints in the lawsuit were "personal in nature and generally related to [the plaintiff's] own situation[,]" and "there [was] no suggestion in [the] record that she 'wanted to debate issues of . . . discrimination, that her suit sought relief against pervasive or systemic misconduct by a public agency or public officials, or that her suit was part of an overall effort . . . to correct allegedly unlawful practices or bring them to public attention.'" *Id.* at 75 (quoting *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993)). Similarly,

in *Weintraub v. Board of Education of City School District of City of New York*, the Second

Circuit held that a public school employee's filing of an internal grievance was not protected

speech.  There, the court focused on the public employment context and the lack of a "relevant

analogue to citizen speech."  593 F.3d at 204.  Specifically, in concluding that the plaintiff's

grievance "lacked a relevant analogue to citizen speech and 'retain[ed no] possibility' of

constitutional protection[,]" the Second Circuit stated as follows:

> The lodging of a union grievance is not a form or channel of
> discourse available to non-employee citizens, as would be a letter to
> the editor or a complaint to an elected representative or inspector
> general.  Rather than voicing his grievance through channels
> available to citizens generally, [the plaintiff] made an internal
> communication pursuant to an existing dispute–resolution policy
> established by his employer, the Board of Education.

*Id.* (quoting *Garcetti*, 547 U.S. at 423).

Here, Plaintiff's numerous internal complaints focus solely on the manner in which he was

treated by Defendant.  Plaintiff alleges that he was retaliated and discriminated against based

upon his race, gender, age, and disability.  His internal complaints and the instant lawsuit do not

allege a widespread pattern of such conduct by Defendant that extends to numerous employees,

rather they contend that Defendant singled Plaintiff out with this allegedly improper behavior.

Moreover, Plaintiff states that Defendant's regulations require the immediate reporting and

disclosure of discriminatory allegations, making such reporting a requirement of his employment

within the District.  *See* Dkt. No. 6 at ¶ 169.  Plaintiff fails to allege that he raised these concerns

in a manner to start a public discussion on the issue, and does not advocate for protecting other

individuals from receiving the same treatment that he complains of.  Accordingly, the Court finds

that Plaintiff's internal complaints, the filing of his DHR proceeding, and the instant lawsuit were

not private speech made on a matter of public concern. Thus, Defendant's motion is granted on this ground and Plaintiff's First Amendment retaliation claim is dismissed.

**D.      Fifth Amendment Claims**

The Fifth Amendment "appl[ies] to and restrict[s] only the Federal Government and not private persons." *Pub. Utils. Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461 (1952). "Where, as here, defendants are municipal, rather than federal entities and officials, a due process claim under the Fifth Amendment must be dismissed." *Sylla v. City of New York*, No. 04-CV-5692, 2005 WL 3336460, *2 (E.D.N.Y. Dec. 8, 2005) (citing *id.*). Here, Defendant is a New York State public school district and Plaintiff has not alleged any connection between Defendant and the federal government. Accordingly, Plaintiff's Fifth Amendment claims are dismissed.

**E.      Fourteenth Amendment**

***a. Procedural Due Process***

To prevail on a procedural due process claim, a plaintiff must allege that "he has suffered a deprivation of a liberty or property interest protected by the Constitution without being afforded adequate safeguards." *Kirby v. Yonkers Sch. Dist.*, 767 F. Supp. 2d 452, 463 (S.D.N.Y. 2011) (citing *Segal v. City of New York*, 459 F.3d 207, 218 (2d Cir. 2006)). In the employment context, "the employee seeking to establish a property interest must show 'more than an unilateral expectation of it;' instead he must have a 'legitimate claim of entitlement.'" *Id.* (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

In the context of a property interest, Plaintiff has failed to allege any protected interest in his employment that has been denied without due process. He has not been demoted, denied a promotion, or terminated from his employment. To the extent that Plaintiff alleges that he had a

property interest in receiving a response from his FOIL requests, "a plaintiff has no property interest in obtaining FOIL documents." *Blount v. Brown*, No. 10-CV-01548, 2010 WL 1945858, *2 (E.D.N.Y. May 11, 2010) (citations omitted); *accord Papay v. Haselhuhn*, No. 07 Civ. 3858, 2010 WL 4140430, *7 (S.D.N.Y. Oct. 21, 2010) ("[A]ccess to these [FOIL] documents constitutes a mere expectation of Plaintiff, not an entitlement that would establish a property interest under the Due Process Clause"); *see also Davis v. Guarino*, 52 Fed. Appx. 568, 569 (2d Cir. 2002) (summary order) (holding that a § 1983 claim is not the proper context to challenge denied state FOIL requests).

To the extent that Plaintiff attempts to allege a due process violation based upon his liberty interest in his reputation, his amended complaint likewise fails to plead such a claim. The Second Circuit has described the standard for pleading a liberty interest in public employment as follows:

> A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983. *See Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976); *Morris v. Lindau*, 196 F.3d 102, 114 (2d Cir. 1999). Instead, when dealing with loss of reputation alone, a state law defamation action for damages is the appropriate means of vindicating that loss. *Davis*, 424 U.S. at 701–02, 96 S. Ct. 1155; *Morris,* 196 F.3d at 114.
>
> Loss of one's reputation can, however, invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest, such as government employment. *Roth*, 408 U.S. at 572–73, 92 S. Ct. 2701; *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994). For a government employee, a cause of action under § 1983 for deprivation of a liberty interest without due process of law may arise when an alleged government defamation occurs in the course of dismissal from government employment. *Roth*, 408 U.S. at 573, 92 S. Ct. 2701; *Morris*, 196 F.3d at 114. This type of claim is commonly referred to as a "stigma-plus" claim. *Id.*

*Patterson v. City of Utica*, 370 F.3d 322, 329-30 (2d Cir. 2004).

Here, since Plaintiff has failed to allege a material change in employment status, demotion, or termination from his employment, he has failed to state a claim that he has either a protected property or liberty interest in his employment at the Defendant school district. Accordingly, Defendant's motion is granted on this ground and Plaintiff's procedural due process claims are dismissed.

### b. Substantive Due Process

To state a claim for a substantive due process violation, a plaintiff "must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)) (other citations omitted). While there is no universally applicable test for what is conscience-shocking, "'malicious and sadistic' abuses of power by government officials, intended to 'oppress or to cause injury' and designed for no legitimate government purpose, 'unquestionably shock the conscience.'" *Id.* at 94 (quoting *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252 (2d Cir. 2001)).

Here, Plaintiff's allegations are generally that Defendant engaged in discriminatory and retaliatory conduct against Plaintiff on the basis of his race, gender, age, protected status, and First Amendment speech. Plaintiff's amended complaint is devoid of any other allegations, separate from his other constitutional claims, that could be deemed to shock the conscience. Thus, the only allegedly arbitrary or shocking actions that Defendant engaged in against Plaintiff were the violation of his other protected rights. Such allegations of violating Plaintiff's other rights, which have been independently raised in other causes of action, cannot serve as the basis for a substantive due process claim. *See Velez*, 401 F.3d at 94 ("Because we believe that, as a matter of law, defendants' purported actions would not—but for the allegations of First

Amendment violation, or . . . Equal Protection Clause violations—be sufficiently shocking to state substantive due process claims, we conclude that plaintiff's substantive due process claim is either subsumed in her more particularized allegations, or must fail").  Plaintiff's remaining allegations, liberally construed and considered collectively, simply fail to allege sufficiently conscience-shocking actions to substantiate a viable substantive due process claim.  Accordingly, Defendant's motion to dismiss is granted on this ground and Plaintiff's substantive due process claim is dismissed.

### c. Equal Protection

To state an equal protection claim, a plaintiff must allege "(1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)).  Here, Plaintiff's equal protection claim fails because, apart from conclusory allegations that other, unidentified individuals were "similarly situated," he has not specifically alleged that any similarly situated individuals were treated differently than he was.  *See Richard v. Fischer*, 38 F. Supp. 3d 340, 354 (W.D.N.Y. 2014) (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994)) ("To allege a violation of the Equal Protection Clause, 'it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently'"); *see also Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011) (quotation omitted) ("[W]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential component of such a claim [and] [c]onclusory allegations of selective treatment are insufficient to

state an equal protection claim").  Accordingly, Defendant's motion is granted on this ground and Plaintiff's equal protection claim is dismissed.

## F.     Remaining State Law Claims

In light of the dismissal of Plaintiff's federal causes of action, and given that the Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, the Court refuses to exercise its supplemental jurisdiction over the remaining state law claims. Accordingly, to the extent that Plaintiff's amended complaint asserts various state law claims, those claims are dismissed without prejudice to re-file in state court.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well").

## G.     Leave to Amend Complaint

### *1. Standard of Review*

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted).  Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it."  *Id.* (citation omitted).  As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### *2. Plaintiff's Proposed Second Amended Complaint*

On April 19, 2016, Plaintiff filed a motion to amend his amended complaint and attached his proposed second amended complaint (the "Proposed Complaint") and 180 pages of exhibits. *See* Dkt. Nos. 31, 31-1, 31-2, 31-3. Plaintiff's Proposed Complaint, which consists of 693 paragraphs over 102 pages of highly repetitive, conclusory, and oftentimes vague allegations, generally restates the same allegations contained in his amended complaint and supplements his pleadings with several occurrences that have taken place since he filed his previous complaint. Significantly, Plaintiff filed his Proposed Complaint after receiving Defendant's motion to dismiss, such that Plaintiff was on notice of the potential deficiencies of his amended complaint and the areas in need of additional pleading. The relevant additions in his Proposed Complaint are detailed below.

Since December of 2015, Plaintiff has sought medical treatment several times for anxiety, depression, back spasms, vomiting, and PTSD symptoms, which required him to miss work on multiple occasions. *See id.* at ¶¶ 65-68, 96-97, 118, 352-53, 504. On March 14, 2016, Plaintiff was advised by his physician not to return to work until March 29, 2016. *Id.* at ¶ 103; Dkt. No. 31-2 at 11.

The main additional allegations in Plaintiff's Proposed Complaint are that, between January 11 and January 27, 2016, Plaintiff received ten letters delivered to his home from Superintendent Wiles. *See* Dkt. No. 31-1 at ¶ 30. Plaintiff contends that these letters were retaliatory and harassing based upon his protected status and his filing of previous grievances. *Id.* at ¶ 75. Plaintiff contends that, since these letters essentially label him as a racist, he can no longer expect to receive a promotion or have a reasonable chance to find employment in another district. Dkt. No. 31-1 at ¶¶ 414-15, 528. Further, re-reading these letters caused Plaintiff anxiety

and distress. *See id.* at ¶ 101. Contrary to Plaintiff's assertions, none of the letters reference

racism or others of a protected class. The relevant portions of the letters are as follows:

> Once again I note that while it is not the intent of the District to impede or dissuade you from filing a lawful complaint, despite my previous admonitions, you continue to include in your complaints disrespectful, threatening and disparaging remarks about District staff and administrators. You are also again reminded that pursuant to the District policies and regulations, anyone who makes false, or bad faith allegations will be subject to disciplinary action. Therefore, you are to refrain from harassing and retaliating, including making threatening, disparaging, and disingenuous remarks in your communications against any District employees, administrators, staff, students, residents of the community or anyone who has participated in the investigation of your alleged complaints. If you continue to do so, you will be subject to disciplinary action.

Dkt. No. 31-3 at 35, 38-39, 41-42, 44-45, 47-48, 51, 54, 57, 60. In one of the letters

Superintendent Wiles states that "[y]ou are again reminded that the language and tone of your

complaints must be respectful and professional as is appropriate for a District employee." *Id.* at

Lastly, the final letter on January 27, 2016 concluded with additional language requesting

Plaintiff to refrain from engaging in threatening or disparaging communications with other

District employees:

> The mere fact that you do not like the responses provided to your complaints, does not convert the response to discrimination, harassment, retaliation or hostile workplace. Moreover, neither does your disdain for the response justify your threatening, disparaging, and disingenuous remarks in your communications about any District employees, administrators, staff, or anyone who has participated in the investigation of your alleged complaints, including your allegations of both professional and criminal misconduct. If you continue to do so, you will be subject to disciplinary action.

*Id.* at 62.

On March 22, 2016, Plaintiff received another letter from Superintendent Wiles. *See* Dkt. No. 31-1 at ¶ 111. Plaintiff contends that this letter stated that he "had been found guilty of threatening and harassing community members, staff, administrators and most egregiously, innocent students in his care." *Id.* In the letter attached to Plaintiff's Proposed Complaint, it is clear that Superintendent Wiles did not state that she found Plaintiff guilty of any of the alleged conduct. *See* Dkt. No. 31-3 at 82. Rather, the letter was in response to statements that Plaintiff made to Principal Holly Eikszta concerning the same allegations, that Superintendent Wiles accused Plaintiff of threatening and harassing students and being a racist. Superintendent Wiles' letter simply stated that those statements were not true. *Id.* The text of the letter is as follows:

> On Thursday, March 10, 2016, it was reported to me that you told Principal Holly Eikszta that I had accused you of "threatening and harassing students" and being a "racist." During that meeting, you also told Ms. Eikszta that you would not be reporting back to work until "this is resolved."
>
> Subsequently, on Friday, March 11, 2016, you contacted Mrs. Eikszta and reported that you received letters from me that allegedly included: I called you a racist; you were not allowed to be alone with black or Hispanic staff members without a third party; you are not allowed to be around students because of multiple counts of harassing children and/or alleging that you have to sell your house because you have no money for attorney fees.
>
> Please be advised that your representations to Mrs. Eikszta are false. I have never accused you of being racist; and/or stated that you were not allowed to be alone with black or Hispanic staff members without a third party; and/or stated that you are not allowed to be around students because of multiple counts of harassing children.

*Id.* Further, Superintendent Wiles reported that Plaintiff would need to provide a medical explanation for why he had missed several days of work in March. *Id.*

Plaintiff contends that, on February 3, 2016, he requested help from his neurologist in determining to whom he should submit his ADA accommodation request. *Id.* at ¶ 88. On March

16, 2016 Plaintiff's neurologist sent Superintendent Wiles a letter stating that Plaintiff reported that he had not received his requested accommodation and asking where he should submit his request. *See* Dkt. No. 31-3 at 68. However, Plaintiff does not allege that he requested any accommodation subsequent to his September 16, 2015 letter. Dkt. No. 31-1 at ¶ 92; Dkt. No. 31-3 at 65. On March 11, 2016, Superintendent Wiles sent Plaintiff a letter regarding his accommodation request. *See* Dkt. No. 31-1 at ¶ 105. This letter states that Plaintiff was informed of the procedure to request an ADA accommodation, but never took advantage of this opportunity. Dkt. No. 31-3 at 73. It also references the DHR finding that there was "no probable cause to sustain [Plaintiff's] . . . allegation that [he] submitted a demand for a reasonable accommodation to the District in September 2015." *Id.*

Plaintiff repeatedly alleges that he was treated differently from "other employees similarly situated to plaintiff," but does not specifically allege what individuals were similarly situated or allege specific instances in which Plaintiff was treated differently. *See* Dkt. No. 31-1 at ¶¶ 27, 267, 390, 429.

### 3. Discussion

#### a. Rule 8

With respect to the pleading requirements under Rule 8 of the Federal Rules of Civil Procedure, the Second Circuit has stated as follows:

> Rule 8 provides that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial. *See, e.g.*, *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir. 1980); 2A Moore's Federal Practice ¶ 8.13, at 8-61 (2d ed. 1987). The statement should be short because "[u]nnecessary prolixity in a pleading places an unjustified burden

on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969).

When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial, *see* Fed. R. Civ. P. 12(f), or to dismiss the complaint. Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised. *See Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969). When the court chooses to dismiss, it normally grants leave to file an amended pleading that conforms to the requirements of Rule 8. *See generally* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 366-67; 2A Moore's Federal Practice ¶ 8.13, at 8-81 to 8-82 n.38.

*Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1998).

Here, Plaintiff's Proposed Complaint is a mix of conclusory, vague, and ambiguous allegations that attempt to lump confusingly labeled causes of action into equally confusing enumerated sections. A majority of the allegations are unspecific in nature and undated, such that it is impossible to determine whether the allegations are germane to the instant complaint or whether they are repetitious of the allegations contained in Plaintiff's numerous previous lawsuits. While the majority of Plaintiff's complaint fails to comply with the requirements of Rule 8, and it is questionable whether Defendant could decipher Plaintiff's rambling allegations in order to craft an appropriate response, Plaintiff has clearly alleged certain actions that took place since he filed his previous amended complaint. As noted above, Plaintiff's Proposed Complaint clearly dates and identifies as attached exhibits those letters that Superintendent Wiles sent to Plaintiff starting in January of 2016. As far as the Court can adduce from Plaintiff's Proposed Complaint, the only potentially viable claims arise from his receipt of these letters. Accordingly, the Court will consider Plaintiff's Proposed Complaint to determine whether he has stated any viable claims

from these new allegations, despite the majority of the allegations failing to comply with the requirements of Rule 8.

### b. EEOC Exhaustion

"Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency." *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (quoting 42 U.S.C. § 2000e-5 (2000)); *see also Spurlock v. NYNEX*, 949 F. Supp. 1022, 1026-27 (W.D.N.Y. 1996) (holding that EEOC exhaustion is required in ADA claims); *Boos v. Runyon*, 201 F.3d 178, 181 (2d Cir. 2000) (Rehabilitation Act); *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 566 (2d Cir. 2006) (ADEA). "In addition, the claimant must make the EEOC filing within 300 days of the alleged discriminatory conduct and, before bringing suit, must receive a 'Notice of Right to Sue' letter from the EEOC." *Williams*, 458 F.3d at 69 (citing *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir.2001)) (other citation omitted).

"[T]he purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superceded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998) (quoting *Miller v. Int'l Tel. & Tel.*, 755 F.2d 20, 26 (2d Cir. 1985)) (other citation omitted). "Although the exhaustion of administrative remedies through filing with the EEOC is not a jurisdictional requirement, 'it remains . . . an essential element of Title VII's statutory scheme, . . . and one with which defendants are entitled to insist that plaintiffs comply.'" *Muhammad v. N.Y.C. Transit Auth.*, 450 F. Supp. 2d 198, 205 (E.D.N.Y. 2006) (quoting *Francis v. City of New*

*York*, 235 F.3d 763, 768 (2d Cir.2000)). "Title VII and the ADA's administrative exhaustion requirement mandates that district courts have 'jurisdiction to hear [discrimination] claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is "reasonably related" to that alleged in the EEOC charge.'" *Cable v. N.Y. State Thruway Auth.*, 4 F. Supp. 2d 120, 126 (N.D.N.Y. 1998) (quoting *Butts*, 990 F.2d at 1401).

Claims are considered to be reasonably related when "(1) they would fall within the scope of the EEOC investigation which reasonably could be expected to arise from the original charge of discrimination; or (2) the later claim alleges that the employer is retaliating against plaintiff for filing the original EEOC charge; or (3) the plaintiff 'alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'" *Id.* (quoting *Butts*, 990 F.2d at 1402-03). However, "[t]he EEOC cannot be expected to investigate mere generalizations of misconduct, nor can defendants adequately respond to them." *Choi v. Chem. Bank*, 939 F. Supp. 304, 312 (S.D.N.Y. 1996) (citations omitted). "Thus, if Plaintiff's claims of discrimination, subsequent to the filing of the EEOC charge, would reasonably be expected to fall within the scope of the EEOC investigation, this Court may properly consider them." *Id.* (citation omitted).

"[C]ourts in the Second Circuit have generally held that claims alleging discrimination based upon a protected classification which are different than the protected classification asserted in administrative filings are not reasonably related." *Muhammad*, 450 F. Supp. 2d at 206 (quotation omitted). "Nevertheless, the relationship between a retaliation claim in an EEOC complaint and a subsequently-articulated gender discrimination claim is not one based on a per se rule. It is instead one intimately connected to the facts asserted in the EEOC complaint." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006). "[I]t is [the] substance of the

charge and not its label that controls." *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998).

Here, Plaintiff filed an EEOC charge on June 2, 2015, and received a right to sue letter on August 7, 2015. *See* Dkt. No. 16-6 at 2; Dkt. No. 31-2 at 6. Plaintiff's charge states that it was founded upon Defendant's conduct in discriminating and/or retaliating against him based upon his disability race, age, and gender. Dkt. No. 16-6 at 4-5. Further, Plaintiff stated that "the District has refused to provide me the same [Board of Education] protections of the anti-discrimination and anti-harassment policies, procedures and regulations, which my colleagues receive . . . ." *Id.* at 6-7. Plaintiff specifically cites internal complaints numbered 2014-15-1 through 2014-15-116 as a basis for his charge. *Id.* at 7. Plaintiff contends that none of his internal complaints have been investigated, *id.* at 10, that Defendant has repeatedly threatened him with disciplinary action, *id.* at 11, and that the parties implicated in the complaints are the ones assigned to investigate them, *id.* at 12.

Given that the allegations contained in Plainitff's EEOC charge are essentially the same as those contained in his Proposed Complaint, the Court finds that the allegations stated in this action are reasonably related to the EEOC charge. That Plaintiff filed subsequent internal grievances or received responses to those grievances after he filed his charge does not necessarily dictate that those later complaints are unrelated to the EEOC charge. Rather, the subsequent complaints and responses are generally a repetition of the same complaints that Plaintiff had cited in his EEOC charge, such that they would have reasonably fallen within the scope of the EEOC's investigation and Defendant would have been on notice that Plaintiff opposed their actions in relation to the handling of his subsequent internal complaints. Moreover, Plaintiff's EEOC charge states the same basis for the alleged discrimination and retaliation, i.e. his race, age, gender,

disability, and engaging in other protected activities. *See Muhammad*, 450 F. Supp. 2d at 206.

Accordingly, the Court finds that Plaintiff's EEOC charge is reasonably related to the post-charge

conduct contained in his Proposed Complaint and Plaintiff is not barred from asserting his

harassment and retaliation claims in the instant action on this ground.

### *b. Retaliation and Discrimination Claims*

The standard for evaluating an adverse employment action is the same for Title VII, ADA,

Rehabilitation Act, ADEA, and First Amendment retaliation claims. *See Sarno v. Douglas*

*Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) (Title VII and ADA); *Treglia v.*

*Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (Rehabilitation Act and ADA); *Kessler v.*

*Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) (ADEA and Title VII);

*Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006) (First Amendment and Title

VII). As the Second Circuit described in *Hicks v. Baines*, the Supreme Court now recognizes that

"Title VII's anti-discrimination and anti-retaliation provisions 'are not coterminous';

anti-retaliation protection is broader and 'extends beyond workplace-related or

employment-related retaliatory acts and harm.'" *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir.

2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S. Ct. 2405, 165

L. Ed. 2d 345 (2006)). In a retaliation claim, an adverse employment action is one that is

"materially adverse to a reasonable employee or job applicant." *Id.* (quoting *White*, 548 U.S. at

57, 126 S. Ct. 2405) (internal quotation marks omitted). "Actions are 'materially adverse' if they

are 'harmful to the point that they could well dissuade a reasonable worker from making or

supporting a charge of discrimination.'" *Id.* (quoting *White*, 548 U.S. at 57, 126 S. Ct. 2405); *see*

*also Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (quotation omitted) ("In

the context of a First Amendment retaliation, we have held that '[o]nly retaliatory conduct that

would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action'"). Although Title VII "does not set forth a general civility code for the American workplace," *Hicks*, 593 F.3d at 165 (quoting *White*, 548 U.S. at 68-69, 126 S. Ct. 2405), "the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Id.* (quoting *Zelnik*, 464 F.3d at 227).

"'[P]etty slights or minor annoyances that often take place at work and that all employees experience' do not constitute actionable retaliation." *Lyman v. NYS OASAS*, 928 F. Supp. 2d 509, 523 (N.D.N.Y. 2013) (quoting *White*, 548 U.S. at 69, 126 S. Ct. 2405). However, "[a]dverse employment actions may include negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which aggravated teacher's physical disabilities." *Zelnik*, 464 F.3d at 226. "Thus, '[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.'" *Hicks*, 593 F.3d at 165 (quotation omitted).

In the context of a discrimination claim, the adverse employment action requires a higher threshold than in retaliation claims, such that the plaintiff endures a "'materially adverse change' in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citation omitted) ("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation").

Given the Court's finding above that *res judicata* applies to Plaintiff's DHR determination and Article 78 petition to preclude his previously-pled retaliation and discrimination claims, the Court will only consider any alleged instances of retaliation or discrimination that took place after December 3, 2015, which is when Plaintiff was interviewed for his DHR hearing, to determine if Plaintiff's Proposed Complaint states a claim for retaliation or discrimination. *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 384 (2d Cir. 2003) (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327-28 (1955)) (other citations omitted) ("Where the facts that have accumulated after the first action are enough on their own to sustain the second action, the new facts clearly constitute a new 'claim,' and the second action is not barred by *res judicata*"). While the Court must read all allegations in Plaintiff's Proposed Complaint in the light most favorable to Plaintiff, "where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)). Thus, Plaintiff's allegations of retaliatory conduct must be read in light of the letters attached to his Proposed Complaint.

Plaintiff has undoubtedly suffered numerous physical ailments that he contends are caused by Defendants' actions. *See* Dkt. No. 31-1 at ¶¶ 65-68, 96-97, 118, 352-53, 504. However, employment discrimination and retaliation claims cannot be based solely on a plaintiff's subjective complaints of injury, even if those injuries result in physical manifestation, but instead are judged by whether a reasonable employee in the plaintiff's position would consider the defendant's actions to be materially adverse. *See White*, 548 U.S. at 68 (discussing Title VII retaliation standards and concluding that "[w]e refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective"); *see also*

*Jones v. N.Y.C. Bd. of Educ.*, 2012 WL 1116906, *10 (S.D.N.Y. Apr. 2, 2012) (quotation omitted) ("[A] plaintiff's subjective feelings cannot be used to determine whether an employment action is adverse").

Each of the timely allegations in Plaintiff's Proposed Complaint that he contends amount to retaliation or discrimination were based upon letters that he received from Superintendent Wiles. The relevant portions of those letters are set forth above. The Court finds that the substance of the allegedly retaliatory and discriminatory letters, even when read in the light most favorable to Plaintiff, do not raise to the level of a materially adverse employment action. Apart from the March 22 letter, the other letters each generally start with a thorough explanation of why the District found certain of Plaintiff's internal complaints unfounded. The letters then inform Plaintiff that he may not use harassing or threatening language against other employees, and if he did use such language he would be disciplined. *See, e.g.*, *Lucenti v. Potter*, 432 F. Supp. 2d 347, 364 (S.D.N.Y. 2006) ("Reprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions") (collecting cases). This warning specifically stated that it was not an attempt to dissuade Plaintiff from filing additional complaints, but instead instructed him that he must conduct himself in a professional and appropriate manner. Unlike certain letters that Plaintiff received prior to December 3, 2015, none of the instant letters discuss the race or protected status of any of the other individuals that Plaintiff has implicated in his internal complaints. Thus, Plaintiff's allegations that these letters essentially labeled him as a racist are directly contradicted by the letters that are integrated into his Proposed Complaint by attaching them thereto.

Similarly, the March 22 letter from Superintendent Wiles does not infer that Plaintiff is racist or that he "had been found guilty of threatening and harassing community members, staff,

administrators and most egregiously, innocent students in his care." Dkt. No. 31-1 at ¶ 111.

Rather, the letter is in response to several statements that Superintendent Wiles was informed that

Plaintiff made to Principal Eikszta. The letter details each allegation that Superintendent Wiles

heard that Plaintiff had said about her and then refutes each of these allegations. The letter does

not accuse Plaintiff of any wrongdoing or tell him to stop filing complaints or grievances.

To the extent that Plaintiff argues that receiving these letters at home is a form of

retaliation or harassment, the Court finds that Defendant's actions of sending these letters to

Plaintiff's home, when viewed in the light most favorable to Plaintiff, does not amount to an

adverse employment action. The fact that Plaintiff was out of work at the time he received these

letters, coupled with his repeated complaints of not receiving a timely response to his previous

grievances, would lead a reasonable employee to conclude that the District should respond as

quickly as possible to Plaintiff's complaints by delivering the letters to his home while he was

away from school rather than waiting for him to return. Since the letters attached to Plaintiff's

complaint stand in direct contrast to Plaintiff's allegations that such letters were retaliatory or

discriminatory, the Court finds that Plaintiff's Proposed Complaint does not sufficiently allege

that he suffered an adverse employment action to support a claim of retaliation or discrimination

based on conduct that occurred after his DHR interview on December 3, 2015.

### b. ADA Failure to Accommodate

ADA failure to accommodate claims can arise in two separate scenarios: first when an

employee specifically requests an accommodation, and second when an employer is aware that an

employee may be in need of an accommodation but that employee fails to specifically request

such accommodation. *See Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008). In

the latter case where an employee does not make a specific request for accommodation, the

employer must "engage in 'an "interactive process" [with their employees and in that way] work together to assess whether an employee's disability can be reasonably accommodated.'" *Id.* (quoting *Jacklan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000)).

Here, Plaintiff's Proposed Complaint does not allege that he made a request for an accommodation since September of 2015. *See* Dkt. No. 31-1 at ¶ 92. The only allegation that could be interpreted as a request for accommodation is that Plaintiff's neurologist sent Superintendent Wiles a letter asking where Plaintiff should make his accommodation request. *See* Dkt. No. 31-3 at 68. Contrary to Plaintiff's assertions in his Proposed Complaint, Defendant has provided Plaintiff with numerous opportunities to present his accommodation requests. In a series of letters sent to Plaintiff at the start of each year, the District's 504 compliance coordinator Ms. Lisa Dwyer, sent Plaintiff a letter explaining to him the process for appropriately requesting an accommodation. *See* Dkt. No. 35-3 at 5-10.[1] Accordingly, Plaintiff's allegations that he was unaware of where to send any accommodation requests is belied by the documented outreach of Defendant to provide Plaintiff with the opportunity to make such requests. Thus, the court finds that Plaintiff's Proposed Complaint, in addition to failing to allege that he made any request for accommodation after submitting his DHR complaint, also fails to allege that Defendant failed to engage in a sufficiently interactive process to satisfy the requirements of the ADA. *See Nugent v. St. Likes-Roosevelt Hosp. Ctr.*, 303 Fed. Appx. 943, 946 (2d Cir. 2008) (summary order) ("An

---

[1] Although these cited documents are not attached to Plaintiff's Proposed Complaint, they may be cited in the instant motion to dismiss because they were submitted as an exhibit in Plaintiff's previous DHR proceeding. *See Johnson v. Cnty. of Nassau*, 411 F. Supp. 2d 171, 178 (E.D.N.Y. 2006) (quotation and citations omitted) ("[T]he Court 'may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment'").

employee who is responsible for the breakdown of that interactive process may not recover for a failure to accommodate").

### c. Equal Protection

Plaintiff's Proposed Complaint repeatedly alleges that he was treated differently from "similarly situated" employees. *See* Dkt. No. 31-1 at ¶¶ 27, 267, 390, 429. However, similar to Plaintiff amended complaint, he does not allege a specific individual with whom he is similarly situated or a specific instance in which he was treated differently. Accordingly, the Court finds that Plaintiff's conclusory allegations that he was treated differently from unidentified "similarly situated" employees in some unidentified manner are insufficient to state an equal protection claim. *See, e.g.*, *Terrill v. Windham-Ashland-Jewett Cent. Sch. Dist.*, No. 1:15-CV-0615, 2016 WL 1275048, *8 (N.D.N.Y. Mar. 31, 2016) (collecting cases); *Rutson v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010)) (other citations omitted) (dismissing a plaintiff's claim when "[t]he totality of Plaintiff's allegations regarding his Equal Protection claim is a conclusory assertion, without any detail, that Defendant differed in its 'treatment to other similarly situated property owners'").

### d. First Amendment Retaliation

Plaintiff's Proposed Complaint does not allege any additional speech that he contends is protected beyond advocating for special needs students and their parents. For the reasons discussed above, this speech does not receive First Amendment protection.

### e. Remaining Claims

Plaintiff's Proposed Complaint does not provide any additional allegations that would support his remaining federal claims. Accordingly, the Court finds that granting Plaintiff leave to

file his proposed second amended complaint would be futile. The Court emphasizes that Plaintiff's latest attempt to plead viable claims in his proposed second amended complaint was filed subsequent to Defendant's motion to dismiss, such that Plaintiff was aware of any potential deficiencies in his previous amended complaint and, despite such notice, was unable to provide any clear allegations that would give rise to any viable federal claims. To the extent that Plaintiff's proposed second amended complaint pleads facts sufficient to state viable state law claims, the Court again refuses to exercise its supplemental jurisdiction over any such claims in light of the dismissal of all of Plaintiff's federal claims. Accordingly, Plaintiff's motion for leave to file an amended complaint is denied as futile.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 16) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion for leave to file a second amended complaint (Dkt. No. 31) is **DENIED**; and the Court further

**ORDERS** that Plaintiff's amended complaint is **DISMISSED without prejudice** to re-file any viable state law claims in state court; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 20, 2016
      Albany, New York

Mae A. D'Agostino
U.S. District Judge